**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Ruth Hernandez Perez,

Petitioner,

v.

Kristi Noem, *Secretary, U.S. Department of Homeland Security*; U.S. Department of Homeland Security; Pamela Bondi, *U.S. Attorney General*; Executive Office for Immigration Review; Todd Lyons, *Acting Director of U.S. Immigration and Customs Enforcement*; Immigration and Customs Enforcement; David Easterwood, *Field Office Acting Director of Enforcement and Removal Operations, St. Paul Field Office, Immigration and Customs Enforcement*; and United States Citizenship and Immigration Services,

Respondents.

Civ. No. 26-529 (JWB/DJF)

**ORDER ON PETITION FOR WRIT OF HABEAS CORPUS**

---

Lucas Mark Srodulski, Esq., Aust Schmiechen, P.A., counsel for Petitioner.

Ana H. Voss, Esq., and Jesus Cruz Rodriquez, Esq., United States Attorney's Office, counsel for Respondents.

---

This case concerns the limited authority Congress conferred in 8 U.S.C. § 1159(a) to take a refugee admitted under 8 U.S.C. § 1157 into custody for inspection and examination. The question is beyond the basic one of whether Respondents may inspect a refugee for purposes of adjustment of status. It is whether § 1159 authorizes continued physical detention where inspection has not begun, no timeline has been provided, and custody appears untethered from the statutory purpose for which it is permitted. On the

present record, it does not.

**BACKGROUND**

Petitioner is a native and citizen of Venezuela. (*See* Doc. No. 1, Petition ¶¶ 14, 40.) She and her son were admitted to the United States as refugees on September 16, 2024. (*Id.* ¶¶ 14, 32, 41; Doc. No. 3-3, Pet. Ex. C; *see also* Pet. Exs. A, B.) She alleges that she has no criminal history, has never been in immigration proceedings, and has not had her refugee status revoked. (Petition ¶¶ 1, 4, 44, 59.)

On September 24, 2025, Petitioner applied to adjust her status to lawful permanent resident. (*Id.* ¶ 41; Pet. Ex. E.) On October 2, 2025, U.S. Citizenship and Immigration Services ("USCIS") rejected the application because a page was missing. (Petition ¶ 41; Pet. Ex. F.) Petitioner refiled her application as instructed and appeared at her scheduled biometrics appointment. (Petition ¶ 41; Pet. Exs. G, H.)

Applying to enter the country as a refugee is a "highly regulated process" involving multiple levels of security and biometrics screenings, interviews, and assessments involving multiple federal agencies such as the Department of Homeland Security ("DHS") and the Department of State. *See generally Pacito v. Trump*, 768 F. Supp. 3d 1199, 1211–13 (W.D. Wash. 2025).

Once a refugee has been physically present in the United States for at least a year, they must apply for adjustment of status. 8 U.S.C. § 1159(a). DHS or the Attorney General may adjust a refugee's status to lawfully admitted for permanent residence once the refugee (1) submits an application; (2) has been physically present in the United States as a refugee for at least one year; (3) falls under the definition of "refugee" under

8 U.S.C. § 1101(a)(42)(A), or is the spouse or child of someone who does; (4) is not firmly resettled in another country; and (5) is admissible as an immigrant under 8 U.S.C. § 1182(a) and § 1159(c).

On January 9, 2026, DHS, acting through USCIS, commenced an enforcement initiative in Minnesota directed at refugees who had not yet adjusted their status to lawful permanent residence. *See* Press Release, U.S. Citizenship & Immigr. Servs., DHS Launches Landmark USCIS Fraud Investigation in Minnesota (Jan. 9, 2026). The stated focus of the initiative is to "reexamin[e]" refugees in Minnesota "who have not yet been given lawful permanent resident status" by conducting "new background checks and intensive verification" of their refugee claims. *Id.*

On January 18, 2026, Petitioner received a "call-in letter" requesting that she appear at DHS offices on January 20, 2026. (*See* Petition ¶¶ 1, 14, 43; Pet. Ex. I.) Petitioner filled out a response stating that her attorney could not attend on that date. (*Id.*) Petitioner's attorney separately asked to reschedule the meeting to February 1, 2026. (Petition ¶ 43; Pet. Ex. J.) In response, Immigration and Customs Enforcement ("ICE") threatened enforcement action if Petitioner did not appear by January 21. (Petition ¶ 43.)

Petitioner went to the Fort Snelling, Minnesota DHS office on January 21, 2026 at 7:30 a.m., along with two support workers, an interpreter, and an attorney. (*Id.*) Around 9:30 a.m., a DHS agent took Petitioner to a "secure area" without explanation. (*Id.*) The agent then told Petitioner's attorney that her application would be considered on an "expedited" basis. (*Id.*) Petitioner has remained in detention since. (*Id.* ¶¶ 1, 14, 43, 50.) She was not provided a warrant or Notice to Appear. (*Id.* ¶¶ 1, 42, 50, 60.)

## DISCUSSION

### I. Legal Standard

A writ of habeas corpus may issue where a petitioner is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). The petitioner bears the burden of establishing, by a preponderance of the evidence, that the challenged detention lacks a lawful statutory basis. *See Aditya W. H. v. Trump*, 782 F. Supp. 3d 691, 703 (D. Minn. 2025) (collecting cases).

Immigration detention, like all civil detention, must rest on an express congressional grant of authority and must bear a reasonable relation to its statutory purpose. *Zadvydas v. Davis*, 533 U.S. 678, 687, 690 (2001) (quoting *Jackson v. Indiana*, 406 U.S. 715, 738 (1972)). Section 2241 confers jurisdiction to determine whether the Executive Branch has statutory authority to detain an individual, including in the immigration context. *See id.* at 687–88.

### II. Analysis

Petitioner challenges only the lawfulness of her detention under federal law. She does not contest any removal order, the conduct of removal proceedings, or the execution of removal. Therefore, jurisdiction lies under 28 U.S.C. § 2241 to review the legal basis for custody. *See, e.g.*, *Mohammed H. v. Trump*, 786 F. Supp. 3d 1149, 1154–55 (D. Minn. 2025). Because the Petition is not directed at removal, statutory channeling provisions do not apply either. *See Jennings v. Rodriguez*, 138 S. Ct. 830, 841 (2018).

In habeas review, the question is whether the detention is authorized by statute and consistent with constitutional limits. That determination remains for the Article III courts.

*See Zadvydas*, 533 U.S. at 688 ("[T]he habeas statute … does not require courts to defer to the Attorney General's interpretation of the statute. Rather, it requires the courts to determine whether the detention is lawful.").

Respondents point out that Petitioner entered the country as a refugee over a year ago and that her status had not been adjusted to lawful permanent resident at the time of her arrest. Thus, according to Respondents, § 1159(a) authorizes Petitioner's detention.

8 U.S.C. § 1159(a) states that an individual admitted as a refugee who has been physically present in the United States for over one year "shall, at the end of such year period, return or be returned to the custody of the Department of Homeland Security for inspection and examination for admission to the United States as an immigrant in accordance with the provisions of sections 1225, 1229a, and 1231 of this title."

Section 1159(a) authorizes a refugee who has been physically present in the United States for at least one year to "return or be returned to the custody of the Department of Homeland Security for inspection and examination for admission . . . as an immigrant[.]" The statute thus permits custody for a specific and limited function: to allow DHS to conduct the inspection necessary to adjudicate adjustment of status under § 1159(a)(2).

Nothing in § 1159 authorizes detention untethered from that function. Nor does the statute mandate detention, prescribe a minimum duration of custody, or reclassify an admitted refugee as an "arriving alien" or "applicant for admission." The cross-reference to § 1225 provides the procedural mechanics of inspection, not an independent or mandatory detention regime. Custody under § 1159(a) is therefore lawful only to the

extent it serves the inspection and examination contemplated by the statute.

The implementing regulations confirm this limited role. *See* 8 C.F.R. § 209.1(b), (d). A refugee must submit an adjustment application and biometrics after one year of presence, and USCIS determines whether an interview or further examination is necessary. *Id*. The regulations do not require detention, and they do not contemplate prolonged custody in the absence of the statutory inspection.

Respondents do not challenge Petitioner's allegation that she applied to adjust her status four months ago—in September 2025 once she was statutorily eligible to do so—and was responding to a DHS appearance request when she was suddenly arrested. Instead, they claim Petitioner's detention is mandatory because she "failed to acquire permanent resident status within one year." (Doc. No. 8 at 1.) Such a basis for mandatory detention is illogical given that refugees are not eligible to apply for adjustment of status until they have "been physically present in the United States *for at least one year*." 8 U.S.C. § 1159(a)(1)(B) (emphasis added).

Respondents' reassurances that Petitioner's detention "is not indefinite" and that her "inspection will occur in due course" also cannot justify detention. (Doc. No. 8 at 2–3.) "[W]ill occur in due course" is on its face vague and indefinite. Where inspection has not begun, no officer has been assigned, and no timeline has been provided, continued detention ceases to serve the only purpose for which § 1159 permits custody. Habeas review requires more than assurances of future action; the statute must authorize detention now, not at some indefinite point in the future.

Generally, when "unadjusted" refugees are arrested for an inspection under

§ 1159, ICE must determine whether to release the individual or issue a Notice to Appear indicating the removal charges "no later than 48 hours after the arrest." Policy Memorandum, U.S. Citizenship & Immigr. Servs., Requests for Evidence and Notices of Intent to Deny, PM-11039.1, at 2 (May 10, 2010).; *see also* 8 U.S.C. § 1357(a)(2); 8 C.F.R. § 287.3(d). Petitioner has already been in custody under § 1159 for five days. In that time, Respondents flew her to Texas and back to Minnesota. (*See* Doc. No. 7 ¶ 1.) Her attorney is concerned that she has not been given her diabetes medication. (*Id.* ¶ 2.)

The analysis here is straightforward. Petitioner was admitted into the country as a refugee after undergoing an intensive, multi-step vetting process conducted by Respondents. After residing in the United States for more than a year, she applied for adjustment of status as required by and pursuant to § 1159(a) and 8 C.F.R. § 209.1(b). While waiting for Respondents to review her application, Respondents arrested and detained Petitioner because she had not yet been granted lawful permanent resident status; in other words, Petitioner is detained because Respondents have not yet processed her application. Respondents have submitted no evidence showing an inspection under § 1159 has or will occur or whether the purpose of the purported inspection is to determine admissibility.

On the present record, Respondents have not shown that Petitioner's detention is serving the inspection and examination function authorized by § 1159(a). Where Congress has authorized detention for a limited statutory purpose, continued custody is lawful only so long as that purpose is being carried out within a reasonable period. Respondents have neither initiated inspection nor made any showing that detention is

necessary to accomplish it.

The appropriate habeas remedy is conditional relief. Respondents shall either (1) commence and complete inspection and examination pursuant to § 1159(a) within five days of this Order, or (2) immediately release Petitioner from custody. Continued detention beyond that period is not authorized. *See Munaf v. Geren*, 553 U.S. 674, 693 (2008) (describing release as the "typical remedy" for "unlawful executive detention"). Petitioner's other habeas claims are not reached.

**ORDER**

Based on the foregoing, and on all the files, records, and proceedings in this case, **IT IS HEREBY ORDERED** that:

1. The Petition for Writ of Habeas Corpus (Doc. No. 1) is **GRANTED IN PART**.

2. Respondents shall, within five (5) days of this Order, either:

    a. Complete inspection and examination of Petitioner pursuant to 8 U.S.C. § 1159(a), and file a notice confirming that inspection has been completed, identifying the outcome, and stating whether Respondents contend that continued detention is authorized on a specified lawful basis; or

    b. Immediately release Petitioner from custody in Minnesota, and file a notice confirming the date, time, and location of release.

3. Pending compliance with this Order, Respondents shall not transfer or remove Petitioner from this District. If Petitioner has been transferred outside the District

of Minnesota, Respondents shall immediately return Petition to this District, file a notice confirming the date and time of return, and complete the requirements of the preceding paragraph within five (5) days of Petitioner's return. Under either circumstance, Petitioner has the right to have counsel attend their inspection.

4. Nothing in this Order adjudicates the merits of Petitioner's adjustment application or removal proceedings, if any.

5. The relief ordered here is intended to ensure that habeas review is meaningful. If Petitioner is released pursuant to this Order, Respondents may not re-detain Petitioner on the same factual record and under the same statutory theory rejected herein, absent materially changed circumstances or a different and lawful basis for custody. Nothing in this Order precludes Respondents from taking lawful action supported by new facts or distinct statutory authority.

6. Petitioner's other claims are not reached.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Date: January 26, 2026

*s/ Jerry W. Blackwell*
JERRY W. BLACKWELL
United States District Judge